OPINION OF THE COURT
Richard Lee Price, J.
The petitioner, O’Henry’s Film Works, Inc., moves for an order, pursuant to CPLR article 78 directing the court to review the bidding requirements and proposal of the respondents, Bureau of Ferry & General Aviation Operations and its director for the lease area, known as area No. 20, Whitehall Complex, located at the base of the Ferry Terminal ramp, ground space, New York Ferry Terminal Building, New York City, upon the grounds that the subject proposal is ambiguous, incomplete, vague and subject to the personal and subjective discretion in the award of said lease. The petitioner seeks a further order directing a review of the actions of the respondents in failing to permit the petitioner to remain in possession of the subject property on the grounds that the respondents recently forced the petitioner to renegotiate its annual rental and are now *465 attempting to submit the petitioner’s property for public bid, despite petitioner’s acceptance of respondents’ demands.
The petitioner further submits that on such review by the court, as requested, an order be made annulling the request for proposals from the respondents as unlawful, unreasonable, ambiguous, vague and in violation of the general laws in and for the State of New York and directing the respondents to allow petitioner to remain in possession of said subject premises. The order to show cause herein contains a temporary stay. The respondents cross-move for an order, pursuant to CPLR 7801 (subd 1) and 7804 (subd [f]) dismissing the petition herein as a matter of law on the ground that (1) no final determination has been made by respondents and (2) said petition fails to state facts sufficient to entitle petitioner to the relief sought.
Allegedly, the petitioner is presently a holdover tenant whose tenancy is terminable upon 30 days’ notice. Petitioner’s occupancy permit for one year’s duration expired on April 30, 1981. Purportedly in the spring of 1981, the bureau decided that upon the expiration of petitioner’s tenancy, it would be to the city’s best interest to enter into a long-term lease agreement on the subject property rather than short-term tenancy. In July of 1981, the bureau issued request for proposal (RFP) and in a letter dated July 6,1981 advised petitioner of the city’s decision and invited it to participate by submitting a proposal, which petitioner did and which proposal is currently being reviewed by the commissioner. The RFP consists of two documents: (1) a prospectus and (2) the terms and conditions for request for proposal. Purportedly, the public is invited to submit proposals that best meet the city’s needs and expectations based on the terms and conditions set forth in the RFP.
The petitioner, in support of this application, alleges that the subject premises are occupied by it and have been so occupied by it for approximately four years and used by it as a photo-finishing service operation, including the finishing of film and the sale thereof; that on August 6, 1981, certain proposals were opened and read for the operation and control pursuant to a lease agreement of the subject premises presently occupied by the petitioner; said *466 proposals sought requests for proposals for the operation of a full photo-finishing service, including but not limited to the sale of film.
The basis for the petitioner’s application is the contention that the terms and conditions of the request for proposal are vague, ambiguous, indefinite, incomplete and allow too much subjective discretion to be placed in the hands of the respondents for the purposes of selecting a successful bidder.
Allegedly the terms and conditions for requests for proposal states that “it is understood that the proposed lease arrangement is not final upon acceptance of a proposal but is subject to negotiations with the Bureau of Ferry and General Aviation Operation.”
The petitioner contends that such provision prevents a bidder to correctly bid since in bidding he or it does not know exactly what he or it is going to be bidding for. Furthermore, it is asserted that if a successful bidder is chosen he will then have the right to renegotiate the terms and conditions of his own bid, which would have an economic impact upon his operation. It is submitted by the movant that if any bidder is allowed to renegotiate the terms and conditions of its bid, or other lease, that this renegotiation should be available to all bidders, since all bidders may have been willing to have agreed to the same terms and conditions that the successful bidder renegotiated.
The petitioner, in further support of its application submits that it has operated the subject photo-finishing stand and has been a good tenant, beneficial to both the interest of the surrounding society at Whitehall Ferry Terminal, as well as beneficial to the economic interests of the City of New York; that upon the commencement of its tenancy, it has made various capital improvements to the subject premises in excess of $25,000; that during the year 1980, it was forced by the respondents to increase its annual rental from $7,500 to $9,000. The petitioner further avers it did submit a proposal but due to the vagueness and indefiniteness of the ultimate terms under which thé successful bidder would be operating it was difficult and impossible *467 for the petitioner to submit a proposal based upon all the known facts and circumstances surrounding the future tenancy for the subject property. The petitioner argues that the additional right of future negotiation is not allowable under the laws of the State of New York, inasmuch as it precludes other participants from submitting final and binding proposals, since a successful bidder would be allowed to submit an unrealistic proposal and then negotiate it favorably afterwards. Furthermore, it is submitted by petitioner that the request for proposal reserves in the respondent bureau, the right to reject any and all proposals, if in its judgment it deems it to be in the best interest of the City of New York and thereby grants extraordinary discretionary power to the respondents in accepting or rejecting any proposed bidders they may feel are not qualified.
The respondents, in opposition to the petition and in support of its application to dismiss same, allege that the bureau issued requests for proposal (RFP) for a long-term lease agreement on the subject property, rather than a short-term tenancy, to commence at the expiration of petitioner’s tenancy; that the RFP method is frequently used by city agencies in situations where detailed specifications for leasing city property are neither practical nor in the city’s best interest; this method utilizes reasonable and flexible guidelines which allow the prospective lessee’s imagination and creativity in the use and development of city’s property while meeting the city’s basic needs and conditions; that upon the selection of a proposal the proposer is invited to negotiate the final details of the proposed lease agreement, which is then drafted, executed by the proposed lessee and presented to the Board of Estimate for approval by a three-fourths vote; that the board prior to voting conducts a public hearing, at which time, complainants such as petitioner have the opportunity to air their grievances and even submit new proposals; that the board votes on the proposed lease, and the agreement of lease becomes effective on the board’s adoption thereof by a three-fourths vote.
The respondents further contend that there has been no final determination regarding the lease agreement since *468 no proposal has been selected and so the petition of movant is premature. Furthermore, it is contended that petitioner cannot obtain a preliminary injunction since it cannot prove a clear legal right to the relief sought and has not demonstrated the likelihood of success on the merits.
Respondents’ contention that petitioner’s application is not reviewable since prior to a final award of the lease herein any article 78 proceeding to enjoin or review the award is premature (CPLR 7801) is sustainable if limited to the time when a successful bidder is chosen since upon such choice, there is a finality to the choice since the other unsuccessful bidders are denied further negotiation with reference to lease to be executed.
The respondents aver that the petitioner’s contentions that the bid proposals were ambiguous and indefinite are not reviewable by an article 78 proceeding. This lawsuit may have been brought in an improper form when commenced as an article 78 proceeding. However, as long as the petition states a valid cause of action, there are no grounds for dismissal. The CPLR precludes such dismissal (CPLR 103, subd [a]). Many an article 78 proceeding has been treated as a declaratory judgment action. (Siegel, New York Practice, p 579; CPLR 103, subd [c]).
In such a situation, the court is without discretion to dismiss.
Since the proper remedy to obtain the review requested is by declaratory judgment, a CPLR article 78 proceeding for such review is not dismissable but regarded as one for a declaratory judgment. (Matter of County of Rensselaer v Capital Dist. Transp. Auth., 42 AD2d 445.)
Competitive bidding is ordinarily not required as a prerequisite to the granting of a lease by the city, since the award of the lease does not involve the payment or expenditure of funds out of the city treasury (cf. bidding requirements under General Municipal Law, § 103, and NY City Charter, ch 13, § 341). Nevertheless in view of the request for proposals herein, we are realistically confronted by competitive bidding. Can the bidders determine the needs *469 of the city, the terms of the lease, the requirements thereunder to be included in the bids submitted to the respondents under the RFP? Apparently not.
Furthermore, the respondents have a wide latitude in choosing the successful bidder, which privilege might engender various nefarious practices. Furthermore, once a successful bidder is chosen, he can renegotiate the terms of the bid and consequently the resulting lease which could be to the detriment of the foreclosed bidders, even though the respondents asserted complaints thereto may be processed and heard thereon. Certainly in a situation as we might have here, when the ultimate lease is presented to the Board of Estimate, one of whose functions is as caretaker of the city’s property (Bergerman v Lindsay, 58 Misc 2d 1013) such instrument might very well be approved as a matter of course and rote.
The court in Albini v Solork Assoc. (37 AD2d 835) held that the requisite elements for the issuance of a preliminary injunction are likelihood of ultimate success on the merits, irreparable injury absent the granting of the preliminary injunction and a balancing of equities. (See Chrysler Corp. v Fedders Corp., 63 AD2d 567.) Where injunctive relief is granted, it is to be molded to fit the circumstances so as to preserve the status quo to the extent possible (Chrysler Corp. v Fedders Corp., supra). Where injunctive relief can be tailored to preserve the status quo with little prejudice to either side, the degree of proof required as to the elements, other than irreparable injury and the balancing of equities, for a preliminary injunction may be accordingly reduced (cf. Blake v Biscardi, 52 AD2d 834).
If the RFP were redrawn to include terms which were certain and clear in intent the city would not be prejudiced. Whereas if this preliminary injunction were not granted, the petitioner may be irreparably damaged.
It would appear that in the interest of justice this application should be granted and the respondents be directed to prepare a RFP which will fully set forth the terms and conditions of the lease to be bid on and the reasons why bids should be refused should be clearly stated. Undertak *470 ing pursuant to CPLR 6312 (subd [b]) is deemed unnecessary.